UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------

NICOLE ANN B.,

                Plaintiff,        <u>DECISION AND ORDER</u>
                                            1:25-CV-00858-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

In July of 2022, Plaintiff Nicole Ann B.[1] applied for Supplemental Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Dennis Kenny Law, Josephine Gottesman, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 12).

This case was referred to the undersigned on October 17, 2025. Presently pending is Plaintiff's Motion for Remand for Further

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Proceedings.  (Docket No. 16). For the following reasons,

Plaintiff's motion is due to be denied, and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 5, 2022, alleging disability

beginning June 5, 2019. (T at 157-66).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").

A hearing was held on January 22, 2024, before ALJ Robert

Gonzalez. (T at 37-62). Plaintiff appeared with an attorney and testified. (T

at 44-57). The ALJ also received testimony from Joseph Atkinson, a

vocational expert. (T at 58-60).

### B.    ALJ's Decision

On April 10, 2024, the ALJ issued a decision denying the application

for benefits. (T at 7-31).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since July 5, 2022 (the date she applied for

benefits). (T at 12).

The ALJ concluded that Plaintiff's bipolar disorder, generalized

anxiety disorder, learning disorder, attention deficit hyperactivity disorder,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 15.

cardiomyopathy, and headache disorder were severe impairments as defined under the Social Security Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she cannot work at unprotected heights, or with dangerous machinery, and cannot climb ladders, ropes, or scaffolds. (T at 18).  In addition, the ALJ concluded that Plaintiff is limited to understanding, remembering, and carrying out simple instructions; adapting to routine and ordinary workplace changes; and occasionally interacting with supervisors and coworkers, with no ability to interact with the general public. (T at 18).

The ALJ determined that Plaintiff had no past relevant work. (T at 26).

Considering Plaintiff's age (35 on the application date), education (at least high school), work experience (no past relevant work), and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 26).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 5, 2022 (the application date) and April 10, 2024 (the date of the ALJ's decision). (T at 27-28).

On December 20, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 29, 2025. (Docket No. 1).  On June 16, 2025, Plaintiff filed a Motion for Remand for Further Administrative Proceedings, supported by a memorandum of law. (Docket Nos. 16, 17).  The Commissioner interposed a brief in opposition to the motion on August 22, 2025. (Docket No. 19).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether the claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed, which

undermines the RFC determination.  Second, she challenges the ALJ's

step five determination.  The Court will address each argument in turn.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Anita Kaw, Plaintiff's primary care physician, completed a medical source statement in November of 2023, in which she reported that she had treated Plaintiff every 6 months for one year. (T at 356).  Dr. Kaw diagnosed learning disability and bipolar disorder and characterized Plaintiff's prognosis as "guarded." (T at 356).  She reported that Plaintiff could sit, stand, and walk for about 6 hours in an 8-hour workday; frequently lift/carry up to 20 pounds; and frequently twist, stoop, crouch/squat, climb stairs, and climb ladders. (T at 358).

Dr. Kaw opined that Plaintiff would be off-task 25% or more of the workday due to symptoms interfering with her attention and concentration;

could not tolerate work stress; and was likely to be absent from work more than 4 days per month due to her impairments or treatment. (T at 359).

In January of 2024, Dr. Mukesh Jhaveri, a neurologist, completed a mental impairment questionnaire. Dr. Jhaveri reported that he had treated Plaintiff every 1-3 months for approximately 6 months. (T at 360). He diagnosed generalized anxiety disorder, bipolar disorder, intellectual disability, syncope, and alcohol use disorder. (T at 360).

Dr. Jhaveri opined that Plaintiff was unable to meet competitive standards with respect to her ability to remember work-like procedures, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, respond appropriately to changes in a routine work setting, and travel in unfamiliar places. (T at 362-63).

He assessed serious limitation in Plaintiff's capacity to understand and remember very short and simple instructions; maintain attention for 2-hour segments; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; deal with normal work

stress; maintain socially appropriate behavior; and use public transportation. (T at 362-63).

Overall, Dr. Jhaveri opined that Plaintiff had mild to no restriction in her activities of daily living; marked difficulties in social functioning; and marked impairment in maintaining concentration, persistence, or pace. (T at 364).

The ALJ concluded that Plaintiff had mild limitation in understanding, remembering, or applying information; moderate impairment interacting with others; moderate limitation with respect to concentrating, persisting, or maintaining pace; and mild limitation adapting or managing herself. (T at 15-16).

As noted above, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work, where she was only required to understand, remember, and carry out simple instructions; adapt to routine and ordinary workplace changes, and have no more than occasional interaction with supervisors and coworkers, and no interaction with the general public. (T at 18).

In reaching this conclusion, the ALJ found Dr. Kaw's opinion "partially persuasive" and Dr. Jhaveri's opinion "generally unpersuasive." (T at 24-25).  Plaintiff argues that the ALJ erred by discounting these assessments

and overestimating her ability to meet the mental demands of basic work activity.

The Court finds the ALJ's consideration of the medical opinion evidence, and RFC determination, is supported by substantial evidence and is consistent with applicable law. Here's why.

First, the ALJ's decision is supported by other medical opinion evidence of record.

Dr. Alison Murphy performed a consultative psychiatric evaluation in June of 2023.  She diagnosed specific learning disorder, along with a history of unspecified bipolar disorder, unspecified anxiety disorder, unspecified depressive disorder, mood disorder, and unspecified attention deficit hyperactivity disorder. (T at 355).

Dr. Murphy assessed no limitation in Plaintiff's ability to understand, remember, or apply directions and instructions; mild impairment as to using reason and judgment to make work-related decisions; no limitation with respect to social interaction; moderate impairment as to sustaining concentration and performing at pace; and no limitation with respect to sustaining an ordinary routine, maintaining regular attendance, regulating emotions, controlling behavior, and maintaining well-being. (T at 354).

Dr. Murphy reported that the results of her evaluation were consistent with cognitive problems but opined that they were not significant enough to interfere with Plaintiff's ability to function on a daily basis. (T at 354-55).

Dr. E. Frances and Dr. P. Fernandez, non-examining State Agency review physicians, opined that Plaintiff did not have more than mild limitation in any of the domains of mental functioning and, thus, did not have a severe mental impairment. (T at 65-66, 72).

Although the ALJ found Plaintiff somewhat more limited than the consulting and examining physicians (T at 22-24), their assessments nevertheless provide support for the decision to discount the more extreme aspects of the treating providers' opinions. *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

Second, the ALJ reasonably read the record as inconsistent with the more restrictive aspects of the treating providers' opinions.  (T at 24-26). Although Plaintiff's complaints of depression and anxiety were well-

documented, mental status examinations generally described her as cooperative and demonstrating appropriate affect, insight, judgment, grooming, and memory. (T at 241-42, 244, 246, 248, 250, 252, 254, 256, 258, 260, 262, 264, 266, 324-25, 327, 329, 362-63, 366, 368-70, 373).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Third, the ALJ considered Plaintiff's activities of daily living, which included caring for personal needs and household chores, and socializing. (T at 20, 54, 200-02, 304, 354).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked or extreme impairment where, as here, the claimant's activities could reasonably be considered inconsistent with that level of impairment. *See Riaz v. Comm'r of Soc. Sec.*, No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

Lastly, the ALJ did not discount the evidence of limitation in Plaintiff's mental functioning, but formulated an RFC in which Plaintiff was only required to understand, remember, and carry out simple instructions; adapt to routine and ordinary workplace changes, and have no more than occasional interaction with supervisors and coworkers, and no interaction with the general public. (T at 18). *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also*

*Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022)(collecting cases); *Walters v. Saul*, No. CV 19-3232 (AYS), 2021 WL 4861521, at *11 (E.D.N.Y. Oct. 19, 2021); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021).

Plaintiff offers an alternative reading of the record and a different weighing of the competing medical opinions.

However, the ALJ's decision is supported by a reasonable reading of the record, appropriate consideration of Plaintiff's activities of daily living, and rational reconciliation of the medical opinion evidence.  It must therefore be sustained under the deferential standard of review applicable here. *See DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022)("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test."); *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude* otherwise.")(emphasis in original) (citation and internal quotation marks omitted).

B.    *Step Five Determination*

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 26-27).

In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of mail clerk, router, and housekeeping cleaner, which exist in significant numbers in the national economy. (T at 27, 58-60).

Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony, as that testimony was based on the *Dictionary of Occupational Titles*, which has not been updated since 1991 and is therefore outdated and unreliable.[3]

---

[3] The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles* ("DOT"), which is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).

This argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to support a contrary conclusion. *See Strong v. Berryhill*, No. 17-CV-1286F, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019)(collecting cases); *Johnson v. Saul*, No. 3:19-cv-01222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules."); *Harrison v. Comm'r of Soc. Sec*., No. 20-CV-5282 (BCM), 2022 WL 1289357, at *11 (S.D.N.Y. Apr. 29, 2022).

Plaintiff also argues that the hypothetical questions presented to the vocational expert did not account for all her mental limitations. This argument is a restatement of Plaintiff's other challenges to the ALJ's decision and is unavailing for the reasons outlined above.  *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand for Further Administrative Proceedings (Docket No. 16) is DENIED, and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.


Dated: November 12, 2025                    *s/ Gary R. Jones*
                                             GARY R. JONES
                                             United States Magistrate Judge